**In re CUMBERLAND FARMS, INC., Debtor.**

**CUMBERLAND FARMS, INC., Plaintiff,**

**v.**

**TOWN OF BARNSTABLE, Town of Brockton, Town of Brookline, Town of Canton, Town of Chelsea, Town of Dedham, City of Fall River, Town of Halifax, Town of Hudson, Town of Hampden, Town of Lexington, City of New Bedford, Town of Wellesley, Town of Westborough, Defendants.**

**Bankruptcy No. 92–41305–JFQ.**
**Adv. Nos. 93–4210, et al.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 15, 1994.

Barbara Gilmore, Sullivan & Worcester, Boston, MA, for Cumberland Farms, Inc.

Victor Bass, Friedman & Atherton, Boston, MA, for The Municipalities of Barnstable, Brockton, Brookline, Canton, Chelsea, Dedham, Fall River, Halifax, Hudson, Hampden, Lexington, New Bedford, Wellesley and Westborough.

### OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Cumberland Farms, Inc. (the "Debtor") has brought these proceedings against thirteen Massachusetts municipalities and one Maine municipality to contest the valuations of some forty-seven parcels of real estate. At issue are real estate taxes for fiscal years 1988 through 1993, all of which have been paid except the 1992 taxes. Also contested is the rate of interest on the 1992 taxes. The municipalities move for summary judgment, contending the court lacks jurisdiction. The Commonwealth of Massachusetts has filed an amicus brief in support of the motion.

I hold the court has jurisdiction with respect to only unpaid taxes. I abstain, however, from exercising that jurisdiction because creditors will derive little or no benefit even if the Debtor is successful in contesting these taxes. Today's opinion will control jurisdictional issues raised in similar proceedings pending with other cities and towns.

The Debtor owns and operates almost 1000 convenience stores, with adjacent gas stations, which are located throughout the northeast and Florida. It filed its chapter 11 petition with the court on May 1, 1992 and obtained confirmation of its plan of reorganization on October 22, 1993. Some of the present adversary proceedings were filed prior to confirmation and the others shortly thereafter.

The properties involved include the Debtor's corporate headquarters, tank farms, service stations, convenience stores and residential property. Except for seeking refunds on 1993 taxes, the Debtor has contested very few of the taxes in nonbankruptcy forums.

### JURISDICTION TO ADJUDICATE TAX REFUNDS

Section 505 of the Bankruptcy Code is the only arguable source of the court's jurisdiction to adjudicate these refund claims. It provides in pertinent part as follows:

(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.[1]

The municipalities contend it is now too late for the Debtor to request refunds for the years 1989–1991 and 1993. By the present actions, they say, the Debtor is not "properly" requesting the refunds, as that term is used in the statute, because the request must be made in accordance with state requirements. Under Massachusetts law, a refund is sought by an application for abatement. The application must be filed by October 1 of the tax year involved or, if the tax bill is sent after September 1, within thirty days after the bill is sent.[2] To contest a tax in Massachusetts, the same procedure applies whether or not the tax has been paid.[3]

Subsection (a)(1) of the statute authorizes adjudication of taxes "whether or not paid." This broad grant of jurisdiction is limited by the phrase "[e]xcept as provided in paragraph (2) of this subsection...." Paragraph (2) nevertheless contains no clear command against adjudication of tax refunds. It says only that a refund request may not be determined within "120 days after the trustee properly requests" the refund. Subsection (a)(2)(B) is thus open to the interpretation that it applies only if the estate representative has in fact sought a refund within the applicable limitations period. That has not occurred here, so arguably subsection (a)(2)(B) has no application. The reference to the "trustee", moreover, is not a particularly apt way of describing a procedural requirement concerning action taken concerning prepetition taxes. The prepetition debtor rather than an estate representative would

presumably be the party who would have disputed prepetition taxes.

Such a narrow interpretation would be consistent with the subsection's role as an exception to the grant of broad jurisdiction conferred by subsection (a)(1). It is arguably illogical to read (a)(2)(B) so as to almost completely take away all that (a)(1) gives. This reasoning is less persuasive, however, when one considers the interplay between subsections (a)(1) and (a)(2)(A). Subsection (a)(1) grants jurisdiction to determine a tax "whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." Subsection (a)(2)(A), on the other hand, prohibits the court from determining a tax "contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction...." Here the later subsection clearly takes away a large part of the jurisdictional grant contained in the earlier subsection. A broad reading of subsection (B) would make it consistent with subsection (A) in its scope. Under this interpretation, the phrase "properly requests" requires compliance with state procedural requirements and limitation periods.

I must also bear in mind two recent decisions in this district that give broad meaning to "properly requests." Without considering legislative history, a bankruptcy judge and a district judge of this district have construed the phrase to create an absolute bar against the court adjudicating tax refund rights.[4]

In the final analysis, therefore, section 505 is ambiguous. It has no "plain meaning."[5]

I seek guidance from the statute's history. I begin with the provision on taxes contained in the prior Bankruptcy Act. Section 2a(2A)

1. 11 U.S.C. § 505 (1988).

2. Mass.Ann.Laws ch. 59, § 59 (Law.Co-op.1990).

3. Id.

4. See In re St. John's Nursing Home, Inc., 154 B.R. 117, 123–25 (Bankr.D.Mass.1993); aff'd 169 B.R. 795, 799–803 (D.Mass.1994). This district having more than one district judge, I am nevertheless not bound by the district judge's decision there. E.g., In re Shattuc Cable Corp.,

138 B.R. 557, 567 (Bankr.N.D.Ill.1992). The municipalities do not contend otherwise.

5. Cf. Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) (quoting Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 50–51, 75 L.Ed. 156 (1930) (when statutory language has a plain and unambiguous meaning, judicial inquiry is complete except in "rare and unusual circumstances"); Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981) (same).

of the prior Act had much clearer language concerning refund rights. It gave the bankruptcy court jurisdiction to:

(2A) Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review.[6]

The prior statute's unrestricted grant of jurisdiction was expressly limited to adjudication of an "unpaid tax." It gave the court a highly restricted role on refund rights. The court could only authorize the estate representative to prosecute the appeal of a refund request in a nonbankruptcy forum, and then only if the time for taking the appeal had not expired.

The history of present section 505 is revealing. The bill filed in the House was essentially identical to section 2a(2A) of the prior Act in its provisions concerning paid and unpaid taxes. The House bill merely added language facilitating the early resolution of tax liabilities incurred during administration of the estate.[7] The report of the House Committee on the Judiciary confirms that the House's intent was to make only stylistic changes to section 2a(2A) of the Act.[8]

The Senate version of section 505 was more elaborate than the House version, containing lengthy provisions concerning proofs of claim and the nondischargeable aspect of tax claims. The Senate was nevertheless equally clear in its intent not to give the court jurisdiction to adjudicate tax refund claims.[9] Under its bill, "no determination"

---

6. 11 U.S.C. § 2a(2A) (*repealed* 1978).

7. Section 505 of the House bill provided:
   (a) The court may determine the amount or legality of any unpaid tax, whether or not previously assessed, that has not been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.
   (b) The trustee may prosecute an appeal or review of an adjudication by a judicial or administrative tribunal of competent jurisdiction of any tax, whether or not paid, if the time for appeal or review, as the case may be, of such adjudication has not expired before the date of the filing of the petition.
   (c) A trustee that is in doubt concerning any unpaid liability of the estate for any tax incurred during the administration of the case may request the court to determine the amount of such liability. If such determination is necessary to permit expeditious closing of the case, the court shall order the governmental unit charged with responsibility for collection or determination of such tax, whether or not such governmental unit or the government of which such governmental unit is a part is otherwise a party to the case, to appear and show cause why such tax, if any, computed by the trustee and revised to reflect any events occurring before the closing of the case under section 350 of this title, should not be approved. The final order of the court determining the liability of the estate with respect to such tax under this section binds the governmental unit imposing such tax, and payment of

such tax discharges the trustee, the debtor, and any successor to the debtor from any liability for such tax.
   H.R. 8200, 95th Cong., 1st Sess. (1978).

8. The Committee's report stated in part:
   Subsections (a) and (b) are derived, with only stylistic changes, from section 2a(2A) of the Bankruptcy Act, added in 1966. They permit determination by the bankruptcy court of any unpaid tax liability of the debtor that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction before the bankruptcy case, and the prosecution by the trustee of an appeal from an order of such a body if the time for review or appeal has not expired before the commencement of the bankruptcy case. As under current Bankruptcy Act § 2a(2A), *Arkansas Corporation Commissioner v. Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941), remains good law to permit abstention where uniformity of assessment is of significant importance.
   H.Rep. No. 595, 95th Cong., 1st Sess. 356 (1977) U.S.Code Cong. & Admin.News 1978 at pp. 5787, 6312.

9. The Senate bill provided in part as follows:
   § 505. Determinations of tax liability
   (a)(1) For purposes of determining any tax liability of the estate or of the debtor:
   (A) The court in a case under this title may determine the liability of the debtor or the estate for—

was to be made if "the debtor has previously ... paid the tax in full to the governmental unit...." [10] Repeating the same thought, the Senate bill prohibited adjudication of a refund if "any administrative prerequisite to a refund of tax has not been satisfied...." [11] The Report of the Senate Committee on the Judiciary, like the House Report, indicates an intent to make only "stylistic" changes to section 2a(2A) of the prior Act.[12] Statements on the floors of both houses briefly describe the final version of section 505 as a "compromise" between the two bills.[13]

The conclusion is inescapable. Although the final version of section 505 was a compromise on some matters, both houses agreed with the general prohibition contained in the prior Act against adjudication of an estate's rights to a tax refund. Section 505(a)(2)(B) must therefore be interpreted to prohibit adjudication by this court of the refund claims in question. I agree with the results in the *St. Johns* decisions.[14]

> (i) any tax, whether or not previously assessed or paid; and
> (ii) the amount of any offset or counterclaim to or net overpayment of, the same tax for the same taxable period.
> (B) The court may not make any determination referred to in subparagraph (A) concerning a tax incurred before the earlier of the order for relief or, in an involuntary case, the appointment of a trustee, if—
> (i) before such determination, a judicial or administrative tribunal of competent jurisdiction has determined any such liability;
> (ii) any administrative prerequisite to a refund of tax has not been satisfied, unless the refund results from an offset or counterclaim to a claim or request for payment made by a governmental unit;
> (iii) the debtor has initiated a proceeding in the United States Tax Court, or a similar judicial or administrative tribunal under State or local law, to contest his liability for such tax; or
> (iv) the period provided under otherwise applicable tax law for initiating a proceeding in any tribunal referred to in subparagraph (iii) has commenced but has not expired, unless the debtor notifies the court in the case under this title that he does not intend to initiate any such proceeding.
>
> (b)(3) Notwithstanding any other provision of this subsection, no determination of the merits of the tax liability may be made under this subsection if—

I came to the opposite conclusion in *In re Ledgemere Land Corp.*,[15] which largely involved unpaid taxes. In there I held that the court has jurisdiction to adjudicate tax refund claims, but I did not examine the legislative history discussed here. I will therefore no longer follow the refund aspect of the *Ledgemere* decision.

The policy behind the statute's distinction between paid and unpaid taxes seems obvious. As asserted in the briefs filed here in support of the motion, recovery of taxes paid many years before raises havoc with the financial stability of a city or town, particularly a small one. A municipality can take appropriate action to collect unpaid taxes. It obviously cannot spend the money before collection. Once the money is in the coffers, however, it soon goes out.

### UNPAID 1992 TAXES

The court's jurisdiction is quite different with respect to the unpaid 1992 taxes. Unlike its provision concerning tax refund

> (A) a judicial or administrative tribunal of competent jurisdiction has previously determined the debtor's personal liability for the same tax; or
> (B) the debtor has previously, with respect to the same tax—
> (i) filed a petition in the United States Tax Court or initiated a proceeding in a similar judicial or administrative tribunal under State or local law; or
> (ii) paid the tax in full to the governmental unit having authority to collect or receive payment of such tax.

S. 2266, 95th Cong., 2d Sess. § 505 (1978).

**10.** *Id.*

**11.** *Id.*

**12.** S.Rep. No. 989, 95th Cong., 2d Sess. 67 U.S.Code Cong. & Admin.News 1978 pp. 5787, 5853 (1978).

**13.** 124 Cong.Rec. H11,095 (1978); 124 Cong. Rec. S17,411 (1978).

**14.** *See also Millsaps v. United States (In re Millsaps)*, 133 B.R. 547 (Bankr.M.D.Fla.1991), *aff'd*, 138 B.R. 87 (M.D.Fla.1991) (holding § 505 gives court no jurisdiction to adjudicate refund claims.).

**15.** 135 B.R. 193 (Bankr.D.Mass.1991).

claims, section 505 contains no language showing deference to state procedure on unpaid taxes.

As discussed above, section 505 in this respect is the same as section 2a(2A) of the prior Act. Under the Act, courts adjudicated the legality and amount of a debtor's unpaid taxes even though the debtor had not contested the taxes under state procedure and the time for doing so had expired.[16] Courts saw as the statute's rationale the belief that creditors should not be prejudiced by a debtor's failure to contest tax claims, which can consume an estate because they are secured or enjoy priority.[17] In similar fashion, like *Ledgemere*, decisions under the Bankruptcy Code construe section 505 as a grant of jurisdiction for adjudication of unpaid taxes even though the debtor has failed to contest the taxes elsewhere and the state limitations period has expired.[18]

■ I nevertheless abstain from resolving the dispute over 1992 taxes.

The Debtor's plan of reorganization has already been confirmed. It provides for a 100% dividend to general creditors, payable over five years, without interest until the plan's fourth anniversary. Funds can become payable ahead of this schedule to the extent there is "excess cash flow," as defined in the plan.

The Debtor makes no attempt to demonstrate the likelihood of an "excess cash flow" becoming a reality. Resolution of these 1992 tax issues, in any event, would have no effect in that regard. The taxes are comparatively small in relation to the Debtor's over-all operations. Even if they were not and I were to rule in the Debtor's favor, an appeal by the municipalities would be virtually certain, so that the Debtor's funds during the next few years would not be affected.

In sum, the potential benefit to the Debtor's creditors from these proceedings is slight or nonexistent. Abstention is thus justified.[19]

### RATE OF INTEREST ON UNPAID TAXES

■ Finally, the municipalities object to the 4.55% rate of interest payable on unpaid taxes under a provision of the Debtor's confirmed plan. They contend they are entitled to the statutory rate of 16%.[20] The Debtor asserts, and the municipalities do not deny, that they were given notice of plan confirmation and failed to object to the provision. The municipalities are therefore bound by the confirmation order under principles of *res judicata.*[21]

16. *E.g., In re Century Vault Co., Inc.,* 416 F.2d 1035 (3d Cir.1969); *City of Amarillo v. Eakens,* 399 F.2d 541 (5th Cir.1968), *cert. denied* 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969); *New England High Carbon Wire Corp. v. Town of Millbury (In re New England High Carbon Wire Corp.),* 39 B.R. 886 (Bankr.D.Mass.1984).

17. *Id.*

18. *E.g., In re Piper Aircraft Corp.,* 171 B.R. 415 (Bankr.S.D.Fla.1994); *In re AWB Assoc., G.P.,* 144 B.R. 270 (Bankr.E.D.Pa.1992); *499 W. Warren Street Assocs., Ltd. Partnership,* 143 B.R. 326 (Bankr.N.D.N.Y.1992); *In re East Coast Brokers & Packers, Inc.,* 142 B.R. 499 (Bankr.M.D.Fla. 1992).

19. *See Starnes v. United States (In re Starnes),* 159 B.R. 748, 751 (Bankr.W.D.N.C.1993) (abstention from tax liability determination appropriate when creditors could not be affected because there would be distribution from estate to any creditor); *In re St. John's Nursing Home, Inc.,* 154 B.R. 117, 126 (Bankr.D.Mass.1993) (abstention appropriate when only party to benefit from determination of entitlement to refund of property taxes was debtor); *Millsaps v. United States (In re Millsaps),* 133 B.R. 547, 555 (Bankr. M.D.Fla.1991) *aff'd,* 138 B.R. 87 (M.D.Fla.1991) (abstention appropriate when tax controversy would have no effect on creditors because there would be no distribution from estate to any creditor). *Cf. Huffman v. Perkinson (In re Harbour),* 60 B.R. 370, 377 (Bankr.W.D.Va.1985) (abstention from action by trustee to set aside allegedly fraudulent conveyance, voluntary transfers and preferences not appropriate when any judgment obtained would inure to the benefit of creditors).

20. This is the rate established in Mass.Ann.Laws ch. 60 § 62 (Law.Co-op.1990).

21. *E.g., Sure–Snap Corp. v. State Street Bank and Trust Co.,* 948 F.2d 869, 873 (2d Cir.1991) (confirmed plan of reorganization binding on debtor and creditors as to plan's provisions); *Miller v. Meinhard–Commercial Corp.,* 462 F.2d 358, 360 (5th Cir.1972) (attempt by parties to relitigate issues involved in confirmed arrangement barred under doctrine of *res judicata*); *In re Blanton Smith Corp.,* 81 B.R. 440, 443 (M.D.Tenn.1987).

A separate order dismissing these proceedings has issued.