**In re MCORP FINANCIAL, INC., MCorp Management, and MCorp, Debtors.**

**MCORP FINANCIAL, INC., MCorp Management, and MCorp, Plaintiffs,**

**v.**

**HARRIS COUNTY, et al., Defendants.**

**Bankruptcy Nos. 89–02312–H3–11, 89–02324–H5–11, 89–02848–H2–11. Adversary No. 95–4073.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Jan. 30, 1996.

Eloise A. Guzman, Calame, Linebarger, Graham, Pena, Houston, TX, for City of Houston.

Gary Todd Stewart, Olson & Olson, Houston, TX, for Harris County Appraisal District.

Donald B. Warshauer, Attorney at Law, Houston, TX, for Harris County.

Michael W. Deeds, Heard, Goggan, Blair & Williams, Houston, TX, for Houston ISD.

Teresa Lazzeri Maines, Sheinfeld, Maley & Kay, Houston, TX, for Plaintiffs.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Chief Judge.

The court has held a trial in the above captioned adversary proceeding. The court makes the following Findings of Fact and Conclusions of Law based on the pleadings, the evidence, the briefs, and the argument of counsel. To the extent any of the Findings of Fact may be considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law may be considered Findings of Fact, they are adopted as such.

### Findings of Fact

MCorp Financial, Inc, MCorp Management, and MCorp ("Debtors" or "Plaintiffs") through Harrison J. Goldin, Liquidating Trustee, seek determination by the court of ad valorem property tax liability for tax years 1992 and 1994 on real property described as Block 142, downtown property in Houston, Harris County, Texas. Trustee contests the appraised value of the property, and asserts that Debtors overpaid taxes to Harris County, the City of Houston, and the Houston Independent School District ("Taxing Authorities") during 1992, and also asserts that the as yet unpaid taxes assessed by the Taxing Authorities for 1994 are excessive.

Block 142 is a city block owned by MCorp Management. The property has been leased since before 1992 to an entity which uses the property as a commercial parking lot.

The Harris County Appraisal District ("HCAD") appraised the value of Block 142 for each of the years 1992, 1993, and 1994. The value appraised by HCAD in 1992 for the property was $16,231,000. The value appraised by HCAD in 1993 and also in 1994 for the property was $13,498,000.

Donald Landry, a registered public appraiser with HCAD, testified that the value of Block 142 was contested before the appraisal review board in 1993. Landry testified that the value determined for that year was an agreed value based on an appraisal conducted by Ernst & Young for Debtors. (Tr., at 43).

The Ernst & Young appraisal (Defendants' Exhibit 6) estimated the value of the property as of March 31, 1993 to be $12,500,000.

Trustee's appraisal (Plaintiffs' Exhibit 2) estimates retrospective values for the property of $11,600,000 for 1992, and $9,720,000 for 1994. Trustee's appraisal was conducted by Gerald A. Teel. Teel testified that he holds the MAI designation, is certified by the State of Texas as an appraiser, and has conducted 12 to 14 appraisals in the central

business district of Houston in the past five years. Teel testified that he conducted the appraisal in accordance with the Uniform Standards of Professional Appraisal Practice. Teel's qualification as an expert in real estate appraisal for property in the central business district of Houston is acknowledged by HCAD. The court finds Teel's testimony highly credible.

Landry reviewed the Ernst & Young appraisal, the records of the HCAD hearing as to value in 1993, and the Teel appraisal in preparing for his testimony. Landry did not conduct an appraisal of Block 142. (Tr., at 39–40).

Teel testified that he determined the value of the property by reference to sales of comparable property in the area, and adjusted the value based on the location of Block 142 relative to the other properties. (Tr., at 10).

Landry and Teel both testified that sales of comparable property during the same time period were all of properties of inferior location to Block 142. (Tr., at 10, 47).

Teel testified that the "highest and best use" of the property is as an office building. However, he included a "holding period" in his calculations, because there had been significant "negative absorption" of office space in the mid–1980's due to layoffs in the energy business. This "holding period" represents the time which Teel believes would be necessary for the market to support development of the property as an office tower. (Tr., at 14).

### Conclusions of Law

Three issues are presented for the court's consideration: first, whether the court has jurisdiction to grant the relief requested; second, whether Landry's testimony is admissible as that of an expert; and third, the value of the property during 1992 and 1994.

### Jurisdiction

Section 505(a) of the Bankruptcy Code provides:

(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount, or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not

contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C. § 505(a).

■ With respect to unpaid taxes, the court has jurisdiction to determine the value of the property and the amount of the tax due. *In re Cumberland Farms*, 175 B.R. 138 (Bankr.D.Mass.1994).

■ The plain language of Section 505(a)(2)(B) requires the court to cede subject matter jurisdiction if the relief sought is a refund, and if the Trustee has not complied with the procedural requirements to obtain a refund from the governmental unit. *In re St. John's Nursing Home, Inc.*, 169 B.R. 795 (D.Mass.1994).

■ Trustee contends that he is not requesting a refund, but rather is requesting a credit against future taxes. The Taxing Authorities contend that Trustee is seeking a refund, but requesting that the refund be applied as a credit against future taxes.

The term "refund" is not defined in the Bankruptcy Code, but has been considered in the cases interpreting Section 505. The term implies that payment of the taxes has already been made. In *Pettibone Corp. v. United States (In re Pettibone Corp.)*, 151 B.R. 156 (Bankr.N.D.Ill.1992), the court distinguished between an "overpayment", defined as "any payment made by the taxpayer over and above the tax liability", and a "refund", which

is an obligation of the IRS to pay the taxpayer an overpayment.

In *In re Cumberland Farms, Inc.*, 175 B.R. 138 (Bankr.D.Mass.1994), the court differentiated between a claim to a refund or an offset based on whether the taxes had been paid.

The facts in *150 North Street Assoc. L.P. v. City of Pittsfield (In re 150 North Street Assoc. L.P.)*, 184 B.R. 1 (Bankr.D.Mass.1995) are very similar to the instant case. The debtor in that case sought a reduction of tax liabilities pursuant to Section 505 based on a reduction in the appraised value of the property for tax years 1990 and 1991. The court rejected the City's contention that the Debtor was actually seeking a refund for real estate taxes notwithstanding the fact that the debtor had made almost all payments for past due taxes, because the payments were made post-petition. 184 B.R., at 6.

The court in *In re 150 North Street Assoc. L.P.* distinguished a refund from an offset based on whether the payment of taxes was made pre-petition or post-petition. The unstated rationale behind this distinction is the same as the rationale identified by the court in *Pettibone*. In the case of a pre-petition tax payment, a tax owed is a debt, which the debtor must contest in the manner prescribed by state law. A post-petition tax payment differs from a pre-petition tax payment, in that the estate pays its taxes as claims, and thus the claims are subject to the claims adjustment procedures of the Bankruptcy Code.

The court concludes that it has jurisdiction to determine the taxes due for 1992 and 1994.

### Qualification of Landry

Rule 702 of the Federal Rules of Evidence provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Rule 702, Fed.R.Evid.

The use of appraisal testimony assists the court in determining values of the property. Landry's qualification as a registered public appraiser pursuant to Tex.Rev.Civ.Stat.Ann. art. 8885 §§ 2(8), 11(3) sufficiently qualifies Landry as an expert.

Trustee seeks to exclude the testimony of Landry on the basis that he did not perform an appraisal of Block 142 and that he has not conducted an appraisal in the central business district of Houston, Texas since 1988. These arguments go to the weight, rather than the admissibility, of Landry's testimony. The court concludes that the testimony of Landry is admitted into evidence.

### Valuation

It is well understood that there are three recognized methodologies for valuing real estate. By the cost approach, the appraised value typically reflects the reproduction cost or the replacement cost of the subject property. The sales comparison approach relies on recent comparable sales. Those sales prices are then adjusted by the degree to which those properties differ from the subject property. By the income approach, the net operating income of the property (gross income less the expenses) is divided by a capitalization rate to obtain the fair market value of the property. Because the cost approach rarely provides an accurate reading of the fair market value of real estate, appraisals routinely disregard it or mention it only in passing, and concentrate their efforts on the sales comparison and income approaches and then adjust for any differences between the two. *150 North Street Assoc. L.P. v. City of Pittsfield (In re 150 North Street Assoc. L.P.)*, 184 B.R. 1, 6 (Bankr.D.Mass.1995).

As noted above, all the appraisals performed upon Block 142 used the same methodology. Both appraisers testified that the methodology used was correct. The appraisals differ only in the manner in which the value is adjusted for the location of the property.

In the Teel appraisal, with regard to 1992, the sales comparison approach yields a total value of $12,220,000. (Plaintiffs, Exhibit 2, at p. 79). For the same period, the income approach in the Teel appraisal yields a value of $10,970,000. (Plaintiffs' Exhibit 2, at p. 83). Teel's appraisal used both of these values in arriving at a value for the property

during 1992 of $11,600,000. The court found Teel highly qualified and persuasive. The court concludes that the value of the property during 1992 was $11,600,000.

■ With regard to 1994, the Teel appraisal lists the value at $9,400,000 by the sales comparison approach, and $9,840,000 by the income approach. (Plaintiffs' Exhibit 2, at p. 79, 84). It is clear that the HCAD value was derived by carrying forward the value from 1993. The court notes Teel's statement in his appraisal that the development of an office building in the next eight to ten years is unlikely, (Plaintiff's Exhibit 2, at p. 47), as well has his testimony under cross-examination stating that the highest and best use of the property during that time period is as a parking lot. The court concludes that the income approach best estimates the value of the property as of 1994. The court concludes that the value of the property for tax year 1994 is $9,840,000.

Based on the foregoing, the court will enter a separate conforming Judgment.