**In re CONSTABLE TERMINAL CORP., Debtor.**

**CONSTABLE TERMINAL CORP., Plaintiff,**

v.

**CITY OF BAYONNE, NEW JERSEY, Defendant.**

**Bankruptcy No. 96–22691 (NLW).**
**Adversary No. 96–2692(NLW).**

United States Bankruptcy Court,
D. New Jersey.

July 28, 1998.

John R. Wenzke, Lasser Hochman, L.L.C., Roseland, NJ, for Constable Terminal Corp.

Kevin Hanly, Hanly & Ryglicki, Edgewater, NJ, for City of Bayonne.

### OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

Before the Court is the City of Bayonne's Cross–Motion to Grant Partial Summary Judgment on that portion of the complaint filed by Constable Terminal Corp. ("Constable") which seeks tax refunds. The City of Bayonne ("Bayonne") argues that Constable is not entitled to a refund for real estate taxes paid for 1991 – 1994 because Constable failed to file a timely tax appeal. Bayonne asserts that Bankruptcy Code § 505(a)(2)(B) provides that any right of an estate to a tax refund is conditioned upon a proper request by the trustee or debtor for a refund. In response, Constable argues that the statutory filing requirements are merely procedural in nature and the broad grant of power in § 505 allows the court to overcome this procedural obstacle. Moreover, Constables asserts that it was procedurally barred under state law from ever filing a tax appeal and that it would be inequitable to deny it an opportunity to do so now. As set forth at greater length below, the court finds that Constable cannot obtain a refund of taxes paid for the years 1991 through 1994.

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference by the United States District Court of New Jersey dated July 23, 1984. The issues raised by this contested matter are core proceedings as defined by Congress in 28 U.S.C. § 157(b)(2)(A), (B), (K) and (O). The within opinion constitutes this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FACTS

From 1984 until August 5, 1997, Constable operated a bulk liquid storage business of non-petroleum liquid products. The majority of Constable's operations were conducted on its property located at Block 482, Lots 10 & 11, City of Bayonne, New Jersey.

Constable claims that beginning in the late 1980's its financial condition was such that it could not timely pay the taxes assessed by Bayonne. Although Constable paid some quarterly tax payments for the years 1991 through 1994, it was not able to pay the full amount due. Pursuant to the books and records of the City of Bayonne, Constable paid all taxes assessed for the tax years 1991 through 1994 on lot 10 and all of the taxes for 1991 through 1993 on lot 11. In addition, Constable paid approximately one half of the taxes assessed for 1994 on lot 11 and the first quarter of the taxes owed on lot 10 for 1995. Cardillo Cert. At Ex. A. Constable asserts that its inability to bring its tax payments current effectively precluded it from pursuing tax appeals in the New Jersey State Court. Arguing that the property was overassessed for those years, Constable now seeks a refund for these tax over payments. Prior to filing the adversary proceeding, Constable had not file a tax appeal or request for refund for the prepetition years 1991, 1992, 1993 or 1994.

On April 3, 1996, Constable filed a voluntary petition under Chapter 11 of the Bankruptcy Code. Constable has operated as a Debtor–in–Possession since filing its petition.

On October 4, 1996, Bayonne filed a proof of claim asserting that Constable owed real estate taxes totaling $241,225.24.

On November 6, 1996, Constable commenced the instant adversary proceeding to determine the amount of pre-petition taxes

due and to determine the proper assessment of taxes for the post-petition years 1995 through 1997. Constable obtained a Limited Appraisal Summary Report of the Property from John O. Lasser Associates Inc. for the years 1991 through 1997 ("Lasser Appraisal"). The Lasser Appraisal posits an appraised value of the Constable property that is significantly less than the assessed value identified by Bayonne. For the years 1991 through 1997, Bayonne assessed the property at a value of $2,632,000. In contrast, the Lasser Appraisal concludes that in the period 1991 through 1997 the property declined in value from $985,000. to $930,000. Constable notes that on August 5, 1997, pursuant to Code Section 363, the Constable property was sold for $750,000. Accordingly, Constable asserts that it overpaid based on the allegedly inflated assessment for the years 1991 through 1994, and those overpayments should be offset against subsequent taxes billed, and if there are any funds in excess of the offset, those funds should be refunded to Constable.

On December 16, 1997, Constable filed a motion to Compel Discovery and/or Strike Answer and Defenses. Bayonne responded on December 29, 1997 by filing a Cross–Motion to Compel Discovery and to Grant Partial Summary Judgment Dismissing Claims for Tax Refunds. The decision that follows only decides Bayonne's cross-motion for summary judgment and does not address the discovery matters raised by both parties.

### DISCUSSION

■■■ Both parties agree that Bankruptcy Code § 505(a)(1) provides bankruptcy courts with broad authority to determine the amount and validity of any tax. They likewise agree that the greater weight of case authority holds that a debtor's failure to comply with a taxing authority's procedural requirements does not preclude the court from the reaching the issue. See, In re Custom Distribution Services, Inc., 216 B.R. 136, 148 (Bankr.D.N.J.1997); In re A.W.B. Assoc., G.P., 144 B.R. 270, 277 (Bankr.E.D.Pa.1992); In re 499 Warren Street Assoc., 143 B.R. 326, 329 (Bankr.N.D.N.Y.1992). These cases hold that a central purpose of § 505 is to protect

creditors "from the dissipation of an estate's assets which could result if creditors were barred by a tax judgment which a debtor, due to its ailing condition, failed to contest." A.W.B. Assoc., 144 B.R. at 277 (citing In re Northwest Beverage, Inc., 46 B.R. 631, 635 (Bankr.N.D.Ill.1985)).

In light of the acknowledged purpose of the statute it seems logical that the failure to adhere to procedural requirements should not pose a bar to a debtor's efforts to obtain a tax refund or a tax credit. However, Bayonne argues that the very terms of § 505(a)(2)(B) restrict the court's ability to authorize refunds or credits. Further, Bayonne submits that this constriction of court authority is consistent with the legislative history and with § 2a(2A) of the Bankruptcy Act, the predecessor to § 505. Bayonne urges the court to find that the phrase "properly requests such refund from the governmental unit" contained in § 505(a)(2)(B)(i) requires that a debtor or trustee has requested or requests the refund or credit within the time period established by state law. According to Bayonne, N.J.S.A. § 54:3–21 provides the statutory mechanism for obtaining a refund, and pursuant to that statute a taxpayer must file a tax appeal on or before April 1 of the disputed tax year with either the County Board of Taxation or the Tax Court. Constable did not timely appeal the assessments for 1991 through 1994. Thus, Bayonne argues that although Constable may challenge and obtain a reduction of the assessments under § 505(a)(1), the bankruptcy court may not award a refund or offset because Constable did not properly (i.e. timely) request a refund as required by § 505(a)(2)(B)(i).

Constable rejects as illogical the construction of § 505 advanced by Bayonne. It contends that the authority in § 505(a)(1) to modify an assessment necessarily is accompanied by the power to direct a refund or credit based on the reassessment. Constable urges the court to find that the deadline for filing a tax appeal as well as the requirement for payment of taxes set forth in the New Jersey statute are merely procedural and do not preclude the bankruptcy court from awarding a refund or authorizing an offset.

Constable additionally argues that § 505(a)(2)(B) is inapplicable because the. refund is sought as an offset to Bayonne's filed proof of claim.

After consideration of the reasoning and case authority proffered by the parties in support of their respective positions, the court finds that the analysis provided by Bayonne is more persuasive.

Section 505 provides in relevant part that: (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) *The court may not so determine* —

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title, or

(B) *any right of the estate to a tax refund, before* the earlier of

(i) 120 days after *the trustee properly requests such refund* from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C. §§ 505(a)(2)(A), (B) (emphasis supplied). Clearly, when addressing whether the court may grant a debtor a tax refund, the court's decision of the issue must begin with the language of § 505(a)(2)(B). What becomes troublesome, however, is interpreting what Congress means when it says the trustee must "properly request" such refund.

When seeking to effectuate Congressional intent, a court's inquiry begins with the text of the statute. *Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.)*, 74 F.3d 420, 444 (3d Cir.1996) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1198 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994)). "Where the plain meaning of a statute is evident from the face of the statute, 'the sole function of the courts is to enforce it according to its terms.'" *Estate of Reddert v. United States*, 925 F.Supp. 261, 269 (D.N.J.1996) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)); *see also In re Unisys Sav. Plan Litig.*, 74 F.3d at 444 ("where [Congress'] will has been expressed in reasonably plain terms, that language must be regarded as conclusive.") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 102 S.Ct. 3245, 3249, 73 L.Ed.2d 973 (1982)). However, when "the statutory language is unclear, [the court] then look[s] to the Act's legislative history." *In re Unisys Sav. Plan Litig.*, 74 F.3d at 444 (citing *Blum v. Stenson*, 465 U.S., 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)); *see also Estate of Reddert v. United States*, 925 F.Supp. at 269 (when the language of a statute is ambiguous a court may consider the legislative history of the statute). It is this court's opinion that the phrase "after the trustee properly requests such refund" in § 505(a)(2)(B)(i) is susceptible to more than one meaning. It can be understood merely to require that the trustee or debtor commence an adversary proceeding under § 505. Alternatively, it can be read to require that the trustee or debtor must file an action in compliance with the particular taxing authority's procedural requirements. Thus, § 505(a)(2)(B)(i) is ambiguous and the court must look to the legislative history of the statute for guidance.

A persuasive reading of the statute and its history can be found in *Cumberland Farms, Inc. v. Town of Barnstable, et. al. (In re Cumberland Farms)*, 175 B.R. 138 (Bankr. Mass.1994). The debtor in *Cumberland Farms* owned and operated approximately 1000 convenient stores and gas stations located throughout the northeast and Florida. It sought refunds from 14 municipalities after contesting the valuation of forty-seven parcels of real estate. At issue was the taxes paid for the fiscal years 1988 through 1991, and 1993. Except for seeking refunds on the 1993 taxes, the debtor had contested very few taxes in the non-bankruptcy forums. *Id.*

at 138–39. The municipalities argued that the debtor had not "properly" requested the refunds, as the term is used in § 505(a)(2)(B)(i), because such requests must be made in accordance with state requirements.[1] *Id.* at 139.

Judge Queenan had previously held that under § 505(a)(2)(B) the bankruptcy court could adjudicate tax refund requests "which were not seasonably contested." *See In re Ledgemere Land Corp.*, 135 B.R. 193, 198 (Bankr.Mass.1991). However, he noted that two other courts in the First Circuit had subsequently reached the opposite conclusion. *See e.g. In re St. John's Nursing Home, Inc.*, 154 B.R. 117, 123–25 (Bankr. D.Mass.1993), *aff'd,* 169 B.R. 795 (D.Mass. 1994). After analysis of the structure and wording of § 505(a)(2)(A) & (B), and consideration of both *St. Johns'* decisions, the court determined that the statute is ambiguous and has no "plain meaning". *Id.*

In order to discern the proper reading of the statute the court engaged in a comprehensive analysis of § 505 and the court's power to adjudicate an untimely tax refund claim. *Id.* at 140–43. Because § 505's origin can be traced to § 2a(2A) of the prior Bankruptcy Act, it found the language of the prior statute instructive. It noted that § 2a(2A) contained "much clearer language concerning refund rights, and that § 2a(2A) plainly stated that the court could only authorize the estate representative to prosecute an appeal of a refund request in a nonbankruptcy forum, and then only if the time for taking that appeal had not expired." *Id.* at 140–41.

The court then thoroughly examined the legislative history of § 505. It observed that "the House bill was essentially identical to § 2a(2A)" and "merely added language facilitating the early resolution of tax liabilities incurred during the administration of the estate." *Id.* at 141 (citing in footnote 7, H.R.8200, 95th Cong., 1st Sess. (1978)). Moreover, "the report of the House Committee on the Judiciary confirm[ed] that the House intent was to make only stylistic

changes to § 2a(2A) . . . ." *Id.* (citing in footnote 8, H.Rep. No. 595, 95th Cong. 1st Sess. 356 (1977), U.S.Code Cong. & Admin.News 1978 at pp. 5787, 6312). Further, the Senate version was equally clear in its intent not to give the court jurisdiction to adjudicate tax refund claims. *Id.* (citing in footnote 9, S. 2266, 95th Cong., 2d Sess. § 505 (1978)). Upon completion of its analysis, the court concluded that both houses of Congress agreed with the general prohibition against the adjudication of an estate's right to a tax refund contained in § 2a(2A) of the prior Act. *Id.* at 142. Accordingly, the court joined the decisions reached by the bankruptcy court and district court in the *St. Johns'* case. *Id.* Judge Queenan then expressly disavowed his prior decision *In re Ledgemere Land Corp.*, 135 B.R. 193 (Bankr.Mass.1991), and concluded his discussion of the issue by noting the policy reasons behind the distinction between paid and unpaid taxes found in § 505:

> [R]ecovery of taxes paid many years before raises havoc with the financial stability of a city or town, particularly a small one. A municipality can take appropriate action to collect unpaid taxes. It obviously cannot spend the money before collection. Once the money is in the coffers, however, it soon goes out.

*Id.*

■ These policy considerations identified in *Cumberland Farms* as underpinning the subsections of § 505, refute Constable's contention that Bayonne's interpretation of § 505(a)(2)(B) is contrary to public policy. The authorization in § 505(a)(1) for a debtor or trustee to challenge an assessment so as to reduce the claim of a taxing authority serves the bankruptcy goal of equitable pro rata distribution of estate funds to the various classes of creditors. The restrictions in § 505(a)(2)(B) on the authority to grant a refund simply prevent a windfall to the estate at the expense of the taxing authority. Constable's assertion that municipalities will be harmed because financially troubled par-

---

1. Judge Queenan observed that under Massachusetts law, a refund is sought by an application for abatement. The application must be filed by October I of the tax year involved or, if the tax bill is sent after September 1, within thirty days after the bill is sent. *Cumberland Farms,* 175 B.R. at 140 (citing Mass.Ann.Laws ch. 59, § 59 (Law.Co-op, 1990)). To contest a tax in Massachusetts, the same procedure applies whether or not the tax has been paid. *Id.*

ties contemplating Chapter 11 will withhold tax payments in order to challenge the assessments in a bankruptcy filing is sheer speculation. Moreover, it can be readily met by the equally speculative contention that Constable's interpretation of the statute will encourage Chapter 11 filings aimed solely at bringing appeals of tax assessments which would otherwise be barred.

Other courts have similarly concluded that § 505(a)(2)(B) prohibits a court from adjudication of an untimely or otherwise jurisdictionally defective request for a tax refund. *See Roberts v. Sullivan County, Tenn. (In re Penking Trust)*, 196 B.R. 389, 396 (Bankr. E.D.Tenn.1996) (finding that the court has no authority under § 505 to determine the right of the estate to a refund of taxes where the trustee has not and could not make a proper refund request under Tennessee law with respect to taxes paid prepetition by the debtor without protest); *Great Bay Power Corp. v. Town of Seabrook, N.H. (In re EUA Power Corp.)*, 184 B.R. 631, 636 (Bankr.D.N.H. 1995) (holding "that under § 505(a)(2)(B)(i), the debtor must timely comply with state procedural requirements to request a refund of taxes already paid to preserve the bankruptcy court's discretionary jurisdiction to decide whether a refund is owed"); *In re Ryan*, 64 F.3d 1516, 1521–22 (11th Cir.1995) (stating that bankruptcy court can decide a request for turnover of a refund only if the debtor has made a proper and timely claim); *In re Dunhill Med. Inc.*, 1996 WL 354696 at *7 (Bankr.D.N.J.1996) (determining that court is without jurisdiction to adjudicate an untimely request for a tax credit); *Millsaps v. United States*, 133 B.R. 547, 553 (Bankr. M.D.Fla.1991) (finding § 505(a)(2)(B) precludes bankruptcy court or any other court, absent satisfaction of condition that taxpayer file a request with the Secretary of the Treasury, from entertaining a refund action where taxpayer failed to file a request for a tax refund); *Matter of Qual Krom South, Inc.*, 119 B.R. 327, 329 (Bankr.S.D.Fla.1990) (finding that period for filing a refund with I.R.S. is jurisdictional, and § 505 does not revive an expired limitation period).

Constable does not deny that it did not file a tax appeal on or before April 1 for the years 1991 through 1994. It also recognizes that new Jersey courts have uniformly held that failure to timely file a tax appeal results in a bar to maintenance of such an action. *See, F.M.C. Stores, Co. v. Boro of Morris Plains*, 195 N.J.Super. 373, 380–81, 479 A.2d 435 (1984). Constable also notes that pursuant to N.J.S.A. 54:3–27.2 a refund only results if a taxpayer is successful on a tax appeal. However, Constable views these facts and the foregoing case authority as irrelevant. It contends that this court may authorize a tax refund or tax credit because the applicable case authority holds that failure to meet state procedural requirements does not bar a bankruptcy court from consideration of the amount or legality of a tax. *See, A.W.B. Assoc.*, 144 B.R. at 276–77; *Custom Distribution Serv.*, 216 B.R. at 148.

While the court agrees with the case authority cited by Constable, the court finds that it is inapplicable to the matter at hand. Although the very language of § 505(a)(1) makes it plain that the bankruptcy court is invested with broad authority to determine a debtor's tax liability, the opening clause to § 505(a)(1) reads "*Except* as provided in paragraph (2) of this subsection, ..." and makes it equally plain that the court's authority is limited by the provisions contained in paragraph (2). Thus, the above cases are unhelpful when considering the proper construction of § 505(a)(2)(B).

Constable additionally argues that because the statute requires that the trustee make the "proper" application that the statute was intended only to apply to refund requests for postpetition taxes or for which the trustee could have conceivably made an application. Constable further concludes that § 505(a)(2)(B) is inapplicable because it does not contain an explicit provision for the trustee to seek a refund under state law for taxes paid in previous years. While such a reading of the statute is possible, the court finds it implausible in light of the statute's legislative history.

Moreover, the court in *EUA Power* pointed out

that the 1978 Bankruptcy Code was the first time the bankruptcy court was granted any power whatsoever to determine the

legality of a paid tax claim. Until that point, the court had powers to determine only unpaid tax liabilities. If Congress intended to significantly extend the bankruptcy court's jurisdiction to include the redetermination of paid taxes by preempting the state law time limitations, as the plaintiff suggests, it would have more clearly expressed its intent to do so.

184 B.R. at 634 (citation omitted). This court agrees that if Congress had intended to restrict the ability to obtain a refund as minimally as Constable suggests, it would have used less restrictive language.

Constable relies primarily on *In re AWB Assoc.* and *Custom Distribution Serv.* to support its position. Neither case is instructive as neither was decided under § 505(a)(2)(B) or addressed the issue of the court's jurisdiction to adjudicate tax refunds or tax credits.

In *In re AWB Assoc.*, the debtor had requested that the court redetermine the amount and legality of taxes owed for the years 1985 through 1991. The debtor had paid all taxes without protest from 1985 to 1989. The court held that "neither a debtor's failure to meet state law procedural requirements nor the lapse of time between the tax year and the time of the filing and determination of a § 505 motion precludes us from considering the amount and legality for any tax for any year in issue." 144 B.R. at 277. Ultimately, the court did not reassess the 1985–1989 tax years because the debtor failed to meet its burden of proof. *Id.* at 280. All references to § 505 dealt either with subsection (a)(1) or (a)(2)(A). There is no indication that the court was presented with, or considered, subsection (a)(2)(B)(i). Likewise, though it appears that the debtor in *Custom Distribution Serv.* sought to recover taxes it allegedly overpaid in certain years, there is no indication in the court's opinion that it was presented with the application of § 505(a)(2)(B)(i). Because neither case squarely addressed the issue, this court finds them unhelpful.

Constable also argues that the Bayonne's construction of § 505(a)(2)(B) is illogical and runs counter intuitive to (a)(1). This exact argument was addressed in *Cumberland Farms*. The court noted that it would be "arguably illogical to read (a)(2)(B) so as to almost completely take away all that (a)(1) gives." *Cumberland Farms*, 175 B.R. at 140. However, when the interplay between subsections (a)(1) and (a)(2)(A) was considered, the court found this reasoning to be less persuasive. *Id.* It observed that while subsection (a)(1) grants the court jurisdiction to "determine a tax 'whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction[,]' [s]ubsection (a)(2)(A), on the other hand, prohibits the court from determining a tax 'contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction....'" *Id.* Subsection (a)(2)(A) clearly takes away a large portion of the jurisdiction grant of section (a)(1) and therefore the "broad reading of subsection (B) would make it consistent with subsection (A) in its scope." *Id.* This court agrees.

■ Constable also advances the argument that § 505(a)(2)(B) does not bar a refund sought as an offset or counterclaim to a claim filed by a taxing authority. Constable supports its argument with legislative history as follows:

The House amendment adopts the rule of the Senate bill that the bankruptcy court can, under certain conditions, determine the amount of a tax refund claim by the trustee. Under the House amendment, if the refund results from an offset or counterclaim to a claim or request for payment by the Internal Revenue Service, or other tax authority, the trustee would not first have to file an administrative claim for refund with the tax authority.

124 Cong.Rec.H. 11,110–11,111 (daily ed. Sept. 28, 1978); S.17426–17428 (daily ed. Oct. 6, 1978). Because Bayonne filed its proof of claim prior to commencement of this adversary proceeding, Constable argues that its refund request is nothing more than an offset or counterclaim to Bayonne's proof of claim and thus Constable has properly requested a claim for refund as required by § 505(a)(2)(B)(i).

■ The court in *In re Dunhill Med., Inc.* 1996 WL 354696 (Bankr.D.N.J.1996) examined precisely this issue. The Internal Reve-

nue Service ("I.R.S.") filed a proof of claim for taxes for various periods between 1990 and 1992. The debtor requested that alleged overpayments in the years 1986 through 1991 be credited against the current tax years. It argued that because it sought the tax credits as an offset to the I.R.S. proof of claim it did not first have to file for a refund with the I.R.S. *Id.* at \*5. After analyzing pertinent authority, the court agreed. *Id.* However, the court also concluded that the court must address whether the claim for a credit was timely asserted, because under the Internal Revenue Code, the timeliness of a refund claim is jurisdictional. *Id.* (citing *Kreiger v. United States,* 539 F.2d 317 (3d Cir.1976)). It determined that a refund claim must be timely filed in order for a bankruptcy court to adjudicate the claim. *Id.* at \*7. This court is persuaded by the analysis in *Dunhill Med.* and finds it equally applicable to claims for refunds or credits with respect to real property taxes. Though the request for a refund may be treated as an offset to the proof of claim filed by the taxing authority it must be a timely request. Further, this court also concurs with the court's holding in *In re Qual Krom* that section 505 "does not serve to revive a period of limitation if it has otherwise expired prior to the filing of the petition." 119 B.R. at 329.

Finally, Constable contends that the relief it seeks can also be viewed as an application for a tax credit, which it contends is not subject to the provisions of § 505(a)(2)(B). It relies upon *In re Continental Airlines, Inc.* 149 B.R. 76, 85 (D.Del.1993), *aff'd in part, rev'd in part,* 8 F.3d 811 (3d Cir.1993), *cert. denied,* 510 U.S. 1192, 114 S.Ct. 1297, 127 L.Ed.2d 650 (1994). Among the issues considered by the court was whether the time for requesting a refund is the equivalent of a statute of limitations which bars a bankruptcy court from considering a tax claim. *Id.* at 85. The court concluded that it is not, and also opined:

> Alternatively, the Court concludes the only claim subject to the restrictions in section 505(a)(2)(B) was the claim by Continental for an April, 1991 refund. Continental was requesting a credit for February and March 1991 taxes paid rather than a refund and thus, under the Bankruptcy Code

the Bankruptcy Court would have full authority to determine the "amount or legality of these taxes" pursuant to § 505(a)(1).

*Id.* at 85. While the foregoing seems to support Constable's position, the court in *Continental* subsequently found that the debtor's failure to request a refund or tax credit within the time frame set forth in the municipal ordinance precluded the debtor from obtaining a refund or credit for the months in question. 149 B.R. at 89. It further stated that

> [w]hile the bankruptcy court placed significant weight on an apparent difference between a credit and a refund the Court is unable to discern and significant difference. The effect of granting a tax credit or a refund in the context of the subject use tax exemption is identical. Under either the credit or refund theory, the practical result is that the use tax Continental paid would be returned to it in a short period of time. Thus, the Court concludes that the time for requesting a refund under Ordinance No. 75 is equally applicable to a request for a credit and subject to the sixty day period provided in the ordinance.

*Id.* Thus, even under the analysis undertaken by the court in *Continental,* Constable's request for a refund is untimely, and must be denied.

### CONCLUSION

For the aforemention reasons, this Court finds that § 505(a)(2)(B) precludes this court from granting tax refunds requests that are untimely under state law. Accordingly, the City of Bayonne's Motion for Partial Summary Judgment Dismissing Constable Terminal Corp.'s Claims for Tax Refunds is GRANTED.