264 N.J. Super. 353 (1993)
624 A.2d 1000
UNIVERSITY PLAZA REALTY CORP., PLAINTIFF-RESPONDENT,
v.
CITY OF HACKENSACK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 24, 1993.
Decided May 5, 1993.
*354 Before Judges KING, BRODY and LANDAU.
Donald J. Lenner argued the cause for appellant (Mr. Lenner, on the brief).
Craig L. Levinsohn argued the cause for respondent (Winne, Banta, Rizzi, Hetherington & Basralian, attorneys; Mr. Levinsohn, on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
*355 The City of Hackensack appeals from a judgment of the Tax Court which ordered substantial reductions in 1988, 1989 and 1990 real property assessments on the land, building and improvements constituting a commercial office building known as One University Plaza owned by University Plaza Realty Corporation (University Plaza). University Plaza's cross-appeal has not been pursued.
The principal issues raised by the City concern the propriety, method and effect of considering the impact of asbestos contamination in determining true market value of One University Plaza. The opinion of Judge Crabtree which supports the Tax Court judgment, University Plaza Realty Corp. v. City of Hackensack, 12 N.J. Tax 354 (Tax 1992), took notice of health hazards presented by the widespread presence of aging asbestos insulation and fire retardant materials in the office building.[1] Proofs provided by University Plaza and accepted by the Tax Court judge tended to show that it had embarked upon a voluntary ten-year $4,000,000 asbestos decontamination program not compelled by state or federal regulation, and that existence of the material asbestos problems had significantly affected lease negotiations, vacancy rates and thus, market value.
The Tax Court found that no investor would purchase this property on the valuation dates without taking into account costs to cure, and it used remaining cure costs as a measure of the consequent reduction in building value. Although it recognized the Supreme Court's opinion in Inmar Associates Inc. v. Borough of Carlstadt and GAF Corporation v. Borough of Bound Brook, 112 N.J. 593, 549 A.2d 38 (1988), the Tax Court here concluded that the absence of government mandated remediation, i.e., the "regulatory neutrality" of this case, presented a markedly different *356 valuation picture from those cases.[2] We affirm.
In Inmar, the Court speculated that,
[b]y imposing on current and past owners and users of land the cost of restoring the land, the regulatory programs perhaps have shifted costs but not values. Had government remained indifferent to the problem, it might better be argued, as Inmar contends, that the land is indeed worthless....
[112 N.J. at 601, 549 A.2d 38]
The Tax Court judge utilized a capitalization of net income approach which accepted a 10% capitalization rate plus the effective tax rates in each of the tax years, and applied the resulting cap rates to the declining net operating income he projected for 1988, 1989 and 1990. The income figures used for the three assessment years reflected an allowance for the effect upon long term stabilized vacancy rates of a higher than normal vacancy rate (9%) attributed to the asbestos problem, but projected its decline as the remediation progressed. The judge then subtracted from the market price achieved by use of his capitalization approach (1988  $13,039,000; 1989  $12,438,713; $1990  $11,702,871), an amount which, for each year, reflected the assumed remaining cost-to-cure impact upon market price. Thus, $4,000,000 was deducted for 1988; $3,600,000 for 1989; and $3,200,000 for 1990.
This valuation approach produced a true value of $9,039,000 for 1988, a revaluation year in Hackensack, and by application of the chapter 123[3] average ratio adjustments, taxable values of $7,862,900 *357 and $7,294,600 for 1989 and 1990 respectively. Hackensack had assessed One University Plaza at $13,041,000 for each year.
On appeal, Hackensack argues that the Tax Court improperly took notice of asbestos health hazards and that the Court should have accepted its expert's conclusion that asbestos contamination had no impact on value. While agreeing with the Court's rejection of the discounted cash-flow method of valuation espoused by University Plaza's expert, Hackensack urges that the presumption of correctness attending its assessment, Pantasote Co. v. City of Passaic, 100 N.J. 408, 495 A.2d 1308 (1985), was not overcome. Further, it contends, even if adjustments to its assessed market value were justified because of asbestos contamination, Inmar, supra, 112 N.J. at 605, 549 A.2d 38, expressly rejected cost-to-cure as an acceptable method for calculating the effect on value of such contamination.
We have reviewed carefully these arguments, and conclude that the Tax Court's judgment should be affirmed substantially for the reasons set forth in Judge Crabtree's reported opinion.
As to the principal legal issues, propriety and manner of recognition of asbestos clean-up costs in a non-mandated remediation setting to arrive at market value, we add our view that Judge Crabtree's analysis was consistent with Inmar. Here, the hypothetical willing buyer and seller would be wholly free to negotiate what effect on value, if any, should be ascribed to the voluntary abatement process and to the economic factors perceived as making it prudent.
As distinct from a property subject to legally mandated remediation, the cost to cure at Hackensack Plaza is not subject to categorization as part of the bundle of rights constituting its total value, just as a mortgage debt. Hackensack Plaza One is not a property subject to expensive clean up costs if sold but which can be continued in profitable use indefinitely by merely avoiding changes in use or ownership. The GAF and Presto Lock properties were so operated. Granting tax relief in such cases could provide a windfall tax benefit to the very persons responsible for *358 toxic conditions, even though no actual clean-up costs are incurred. The Inmar court was understandably concerned with arriving at proper methods to accommodate the constitutional demand for true value assessment, Switz v. Twp. of Middletown, 23 N.J. 580, 592, 130 A.2d 15 (1957); N.J. Const. art. VIII, Sec. 1, ¶ 1, in those unique cases. University Plaza presents a more orthodox case of evaluating market impact of adverse property conditions which are subject to discretionary correction.
As to Hackensack's other contentions, we are satisfied that: (1) judicial notice of the health hazards posed by asbestos was warranted under Evid.R. 9(1) and 9(2)(a), (e); see Beshada v. Johns-Manville Products Corp., 90 N.J. 191, 209, 447 A.2d 539 (1982); Fischer v. Johns-Manville Corp., 103 N.J. 643, 656, 512 A.2d 466 (1986); Stevenson v. Keene Corp., 254 N.J. Super. 310, 320, 603 A.2d 521 (App.Div. 1992), aff'd, 131 N.J. 393, 620 A.2d 1047 (1993), and that Hackensack was not precluded by the judge from challenging the effect of asbestos upon value; and (2) that the presumption of assessment correctness was appropriately overcome by abundant credible evidence in the record which supported the Tax Court's findings respecting market impact of asbestos contamination. In this regard, we also note that Hackensack's assessment was based upon an estimate of leasable space which was overstated by 6,300 square feet.
Finally, we read Judge Crabtree's opinion to be a case-specific analysis, and not a holding that dollar for dollar cost-to-cure is a proper value adjustment standard in every non-mandated remediation case. We see nothing in the opinion to foreclose, for example, greater use of similarly situated comparables as applicable sales data is gathered in this newly emerging area of concern, nor consideration of discounting or capitalizing remediation costs. In affirming, we merely recognize "the unique capability and responsibility of the Tax Court to exercise its power ... to use the information available to it to make an independent determination of value," Inmar, supra, 112 N.J. at 609, 549 A.2d 38; Transcontinental Gas Pipe Line Corp. v. Benards Tp., 111 N.J. 507, 538-540, *359 545 A.2d 746 (1988), where the presumption of validity of the local assessment has been overcome.
Affirmed.
NOTES
[1] Two other buildings known as University Plaza Two and University Plaza Three form part of the University Plaza complex, but were erected at a later state of the art and apparently do not suffer comparable asbestos problems.
[2] In GAF, the property was still in use but a transfer of ownership would have triggered the clean-up mandates of N.J.S.A. 13:1K-6 to -14. In Inmar, the site was abandoned by the owner's tenant, and on the federal Superfund list under 42 U.S.C. Sec. 9601 to 9675 (CERCLA). In an unreported case, Presto Lock, Inc. v. Garfield, No. 02-21-0392-3-87D (Tax March 22, 1991), the Tax Court considered Inmar, in light of a mandatory remediation setting where the property was then in use, and suggested that a property's legislatively created "right to be cleansed" is not a devaluing factor but an interest in the property to be considered together with all interests in the property in determining full value, which is the summation of value of all interests in the property.
[3] N.J.S.A. 54:51A-6.