PER CURIAM.
This is plaintiffs appeal from the Tax Court’s decision on remand from Badische Corp. (BASF) v. Town of Kearny, 288 N.J.Super. 171, 672 A.2d 186 (App.Div.1996) (Badische III). Because the judge clearly ignored the directives we set forth on remand, we are compelled once again to reverse and remand the matter.
The facts underlying this appeal are set forth in detail in Badische III and Badische Corp. (BASF) v. Town of Kearny, 14 N.J.Tax 219 (Tax 1994) (Badische II). In this appeal, BASF once again challenges the 1992 assessed value of its closed, environmentally contaminated chemical plant property in Kearny. The tax court was instructed on remand, inter alia, to reconsider “the refusal to consider economic obsolescence and environmental contamination adjustments as valuation factors____” 288 N.J.Super. at 185, 672 A.2d 186.
With respect to contamination, this court compared the BASF property to the property involved in Inmar Associates, Inc. v. Borough of Carlstadt, 112 N.J. 593, 549 A.2d 38 (1988), holding its principles “controlling.” 288 N.J.Super. at 183, 672 A.2d 186. “[Market forces] driving down the value of commercial property ... subject to cleanup costs ... cannot be ignored____” 288 N.J.Super. at 184, 672 A.2d 186, (quoting 112 N.J. at 606, 549 A.2d 38). We again quoted Inmar, which recognized “the difficulty of evaluating” the effect of contamination, but nevertheless required the tax court “to use the information available to it to make an independent determination of value.” Id. at 609, 549 A.2d 38. On remand in this case, the tax court was therefore specifically *597 instructed to “formulat[e] a proper method for determining the effect of cleanup costs on the value of environmentally contaminated land.” 288 N.J.Super. at 184, 672 A.2d 186. This court specifically noted that “[b]ecause the BASF property was not in use, the principles applied to the Inmar property are controlling.” 288 N.J.Super. at 183, 672 A.2d 186.
Inmar gives us the following principles for accessing the value of unused, contaminated property that is subject to mandatory cleanup at the owner’s expense, and at estimated but undetermined cost: (1) the cost, even if known or reasonably estimated, cannot reduce the market value on a dollar-for-dollar basis; (2) market value is affected and the effect cannot be ignored, because the New Jersey Constitution requires assessment at true value; (3) non-classical, flexible approaches to valuing such property are required; and (4) treating the cost of cleanup as a depreciable capital improvement “contains the seeds of useful doctrine.” 112 N.J. at 605-07, 549 A.2d 38. Applying these principles to the facts in BASF, this court concluded that
[a]s of the assessment date, BASF had submitted a detailed SES to the DEP documenting the environmental history of the subject property. A sampling plan setting forth the method of testing to determine the extent of contamination was submitted and approved by the DEP. Soil and groundwater testing were substantially complete, and some results were available enabling BASF to estimate the amount of contamination and the cost of cleanup at $10 million. BASF established a $10 million reserve to cover these costs. These proofs at least equal, if not surpass, those submitted by Inmar and found by the New Jersey Supreme Court sufficient to warrant remand.
[288 N.J.Super. at 183, 672 A.2d 186.]
We therefore “remand[ed] to the Tax Court to adjust the value of the subject property due to environmental contamination.” Id.
However, this court did not accept BASF’s expert’s method of determining the effect of the cost of the cleanup on the property value. The expert projected the total cleanup costs of $15,296,000 over ten years, which resulted in the value of BASF property at negative $8,926,695. The Supreme Court in Inmar clearly stated that cleanup costs should not be directly deducted from the value of the land. While the Court recognized that cleanup costs should not be ignored in the assessment process, it did not formulate any *598 particular method for such calculations, leaving “to the competence of the appraisal community the sound measure of that adjustment.” 112 N.J. at 608, 549 A.2d 38. This court did the same, “defer[ing] to the Tax Court’s specialized knowledge and expertise and remand[ing] for the formulation of a proper method for determining the effect of cleanup costs on the value of environmentally contaminated land.” 288 N.J.Super. at 184, 672 A.2d 186.. We instructed the Tax Court Judge on remand to consider ISRA clean up costs as a factor, warning that “the methodology ... is not simply to deduct the cost of the cleanup from a putative value of the property.” Id. (quoting Inmar, supra, 112 N.J. at 605, 549 A.2d 38.)
With respect to economic obsolescence, we rejected Kearny’s contention that 23% reduction for depreciation, accepted in Badische I, incorporated the concept of economic obsolescence, which was therefore fully accounted for in subsequent years. We also noted that in Badische II the judge not only rejected the BASF expert’s economic obsolescence methodology, but erroneously denied any adjustment for economic obsolescence. Indeed, the judge criticized the very same factors he had accepted from the same expert in the original appeal. Badische Corp. v. Town of Kearny, 11 N.J.Tax 385 (Tax 1990) (Badische I). We suggested in Badische III that BASF’s argument that the court was bound by its earlier decision might have merit. The Tax Court Judge ignored that issue completely.
On remand the Tax Court Judge again refused to adjust the value for economic obsolescence. His expressed reason was that the plant had closed and “an allowance for economic obsolescence presupposes a continuation of the operation ... [which] involves consideration of the market conditions, of the labor conditions, of environmental restraints and the like and none of those considerations applies here with a terminated operation.” However, the Appellate Division was well aware that the plant was no longer in operation when it issued its decision in Badische III, remanding the matter to the Tax Court for reconsideration.
*599 Absent additional expert or other evidence, we cannot understand why the value of a plant that has totally shut down, apparently at least in part as a result of costly economic obsolescence, would not be even further reduced after closing and sitting idle. The judge’s expressed reason for refusing once again to consider economic obsolescence is, in our view, no reason. We reverse and remand for reconsideration and such further evidence as the trial judge may deem helpful and appropriate.
A trial judge has the responsibility to comply with the pronouncements of the Appellate Division. Jersey City Redev. Agency v. The Mack Properties Co. # 3, 280 N.J.Super. 553, 562, 656 A.2d 35 (App.Div.1995); Daniel v. State of N.J., Dep’t of Transp., 239 N.J.Super. 563, 582, 571 A.2d 1329 (App.Div.), certif. denied, 122 N.J. 325, 585 A.2d 343 (1990). The trial court, on remand, has the peremptory duty to obey the mandate of the Appellate Division precisely as it is written. Flanigan v. McFeely, 20 N.J. 414, 420, 120 A.2d 102 (1956); Jersey City Redev. Agency, supra, 280 N.J.Super. at 562, 656 A.2d 35. Although trial judges are privileged to disagree with the pronouncements of the Appellate Division, this privilege does not extend to noncompliance. Reinauer Realty Corp. v. Borough of Paramus, 34 N.J. 406, 415, 169 A.2d 814 (1961).
We reverse and remand for reconsideration consistent with this opinion and Badische III. But for the fact that the trial judge has retired, we would specify that the case be assigned to another judge on this remand.