**In re CUSTOM DISTRIBUTION SERVICES INC., Debtor.**

**City of Perth Amboy, Appellant,**

**v.**

**Custom Distribution Services, Inc.**

**No. 99–5082.**

United States Court of Appeals, Third Circuit.

Argued Sept. 8, 1999.

Filed Aug. 17, 2000.

Robert J. Cirafesi, (Argued), Alan J. Brody, Wilentz, Goldman & Spitzer, Woodbridge, NJ, Barry W. Frost, (Argued), David A. Martin, Teich, Groh, Frost & Zindler, Trenton, NJ, Attorneys for Appellee.

John B. Hall, (Argued), Sheila N. Maddox, McManimon & Scotland, L.L.C., Newark, NJ, Attorneys for Appellant.

Before: SLOVITER and ROTH, Circuit Judges POGUE,[1] Judge.

## OPINION OF THE COURT

ROTH, Circuit Judge:

This case involves a determination of a debtor's right to receive a refund and offset of certain real property taxes under the Bankruptcy Code. The District Court

---

1. Honorable Donald C. Pogue, Judge for the United States Court of International Trade, sitting by designation.

affirmed the Bankruptcy Court's redetermination of Custom Distribution Services' ("Custom") real estate tax liability and order of refund and offset of any overpayment of those taxes. The City of Perth Amboy (City) appealed, contending that the Bankruptcy Court did not have jurisdiction to entertain Custom's claim for refund and offset because Custom did not "properly request" refunds prior to filing its complaint in Bankruptcy Court as required by 11 U.S.C. § 505(a)(2)(B). The City also argues that Custom did not present sufficient evidence to establish property valuation different from that calculated by the City. For the reasons set out below, we will affirm in part and reverse in part.

## I. Factual and Procedural History

In August 1981, Custom Distribution Services, Inc., purchased 22.5 acres of land containing approximately 15 structures in Perth Amboy, New Jersey. In 1987, Custom and the previous owner of the site, National Lead Industries, jointly commissioned Killiam Associates to conduct an environmental study of the site. The 1989 Killiam Report ("Report") concluded that soil and groundwater remediation would be necessary before any redevelopment of the site could commence.

In 1992, the United States Environmental Protection Agency identified Custom and National Lead Industries as potentially responsible parties for the contamination of the property under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9606 *et seq.* The property was subsequently put on the National Priority List pursuant to 42 U.S.C. § 9605(8) and is listed as a "Superfund Site." The property was also put on the Comprehensive Site List with the New Jersey Department of Environ-

mental Protection under the Industrial Site Recovery Act, N.J.S.A. 13:1K–6 *et seq.*[2]

On March 28, 1994, Custom filed a complaint in the Tax Court of New Jersey against the City, claiming that the City had overvalued the property for the 1994 tax year. Custom sought a reduction of that year's real property tax assessment and a refund of overpaid taxes with interest and costs. On May 23, 1995, however, the Tax Court dismissed the complaint at the request of Custom. Custom did not file tax appeals contesting the City's valuation of its property for any other years.

On October 12, 1994, Custom filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. In June 1996, it brought an adversary action against the City, seeking a reassessment of its municipal real estate tax obligations and tax refunds and/or tax offsets for the years 1992 through 1997. For those years, the City had valued the property as follows:

```
1992—$3.82 million
1993—$3.82 million
1994—$3.84 million
1995—$3.84 million
1996—$3.84 million
1997—unavailable
```

Custom had made the following payments:

```
1992—paid in full
1993—paid in full
1994—paid in full
1995—partially paid
1996—unpaid
1997—unpaid
```

At the evidentiary hearing before the Bankruptcy Court, Custom presented a real estate expert to testify about the effects of environmental contamination on the value of the property. The City objected that the expert was not qualified to offer testimony on environmental contami-

---

2. Due to the environmental contamination, Custom was unable to sell the property and had to limit its own use of it. In November 1994, Custom filed a complaint against National Lead Industries in the Superior Court of New Jersey, Chancery Division, alleging,

*inter alia,* that National was responsible for the contamination and liable in damages to Custom. The action was later removed to the United District Court for the District of New Jersey. *See Custom v. NL Industries,* No. 96–1237, Mem. Op. (N.J. Jan. 6, 1997).

nation and clean-up costs. It also objected to the expert's reliance in his testimony on the Killiam Report and on letters from the Environmental Protection Agency and the New Jersey Department of Environmental Protection because the Report and the letters had not been admitted into evidence. The court overruled both objections.

The Bankruptcy Court issued its opinion on December 17, 1997. The court determined, *inter alia*, that the property was contaminated and stigma attached to the property, causing a diminution in the value of the property. The court held that it had discretion to reduce Custom's tax assessments for the 1992 through 1997 tax years pursuant to 11 U.S.C. § 505. On February 25, 1998, the Bankruptcy Court entered an order reducing the valuation of Custom's property as follows:

1992—$1,071,808.00
1993—$1,070,936.00
1994—$1,017,808.00
1995—$1,007,592.00
1996—$1,024,984.00
1997—$1,020,819.00

The City was ordered to reassess Custom's real estate tax obligations based on the new valuations and to refund any overpayments, less any amount of "taxes, interest, or both, which may be applied against any other delinquencies, including water and sewer charges."

The City moved for reconsideration. Upon denial by the Bankruptcy Court, an appeal was taken to the District Court. In its brief and at oral argument, the City for the first time argued that 11 U.S.C. § 505(a)(2)(B) precluded the Bankruptcy Court from deciding Custom's right to a refund because Custom did not make proper refund requests under New Jersey law for any of the years at issue. The District Court rejected this argument and ruled that § 505(a)(2)(B) was not a jurisdictional statute but a defense that the City waived by not raising below. In Orders filed on January 19, 1999, and February 5, 1999,

the District Court affirmed the judgment of the Bankruptcy Court.

The City now appeals to this Court.

## II. Standard of Review

We exercise plenary review of the District Court's determinations reviewing the order of the Bankruptcy Court. *See In re Trans World Airlines Inc.*, 145 F.3d 124, 130 (3d Cir.1998). We review the Bankruptcy Court's legal determinations de novo, its factual findings for clear error, and its exercise of discretion for abuse thereof. *Id.* at 131.

## III. Discussion

### A. Jurisdiction to Adjudicate Tax Refunds under 11 U.S.C. § 505(a)

Section 505(a) of the Bankruptcy Code permits the bankruptcy court to adjudicate a debtor's tax liability. It states:

(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—

(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title; or

(B) any right of the estate to a tax refund, before the earlier of—

(i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or

(ii) a determination by such governmental unit of such request.

11 U.S.C. § 505 (1993). We have consistently interpreted § 505(a) as a juris-

dictional statute that confers on the bankruptcy court authority to determine certain tax claims. In *Quattrone Accountants, Inc. v. Internal Revenue Service*, 895 F.2d 921, 923 (3d Cir.1990), we stated: "when we review how the language and purpose of Section 505 has evolved, we conclude that Section 505 was intended to clarify the bankruptcy court's jurisdiction over tax claims...." *See also H & H Beverage Distributors v. Department of Revenue of Com. of Pa.*, 850 F.2d 165, 166–67 (3d Cir.1998); *In the Matter of Ribs–R–Us, Inc.*, 828 F.2d 199, 202 (3d Cir.1987).[3]

■ It is undisputed by either party that the Bankruptcy Court had jurisdiction, pursuant to § 505(a)(1), to reduce Custom's property tax assessments for the 1992 through 1997 tax years. The more difficult task lies in defining the precise contours of the jurisdictional grant embodied in § 505 with regard to refunds and offsets of taxes already paid by Custom. Although the bankruptcy court is given broad discretion to determine the debtor's tax liability in § 505(a)(1), § 505(a)(2)(B) precludes the bankruptcy court from determining the right of the estate to a tax refund before the earlier of 120 days after

the trustee properly files a tax refund claim or a determination by the taxing authority denying the tax refund request. The City contends that the § 505(a)(2)(B) limitation on the bankruptcy court's jurisdiction applies here because Custom failed to contest the City's valuation pursuant to N.J.S.A. 54:3–21, which provides that a taxpayer must file an appeal to the county board of taxation on or before April 1 of the tax year, or 45 days from the time notices of assessment are mailed.[4] According to the City, because Custom did not comply with state procedural requirements and request a reassessment for any of the tax years at issue, it failed to "properly request" refunds as required by § 505(a)(2)(B)(i). The Bankruptcy Court, the City therefore concludes, was without jurisdiction to order the City to refund any overpayments made by Custom.[5]

■ In evaluating the City's claim that the "properly requests" requirement of § 505(a)(2)(B)(i) requires the debtor to file a claim for refund in accordance with the procedures set out by the taxing authority, we begin with the plain language of the statute. *Idahoan Fresh v. Advantage Produce Inc.*, 157 F.3d 197, 202 (3d Cir.1998) ("[E]very exercise of statutory interpreta-

3. Because § 505 is a jurisdictional statute that defines the bankruptcy court's power to adjudicate tax claims, and as such is not waivable and may be raised at any time, including on appeal, *see Weaver v. Bowers*, 657 F.2d 1356, 1360 (3d Cir.1981) (en banc), we need not reach the question of whether the City properly preserved its § 505(a)(2)(B) claim for appeal.

4. N.J.S.A. 54:3–21 reads in pertinent part:

(Appeal by taxpayer or taxing district; petition; complaint; transfer; extension of filing date): A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may on or before April 1, or 45 days from the date the bulk mailing of notification of as-

sessment is completed in the taxing district, whichever is later, appeal to the county board of taxation by filing with it a petition of appeal....
Stat.Ann. § 54:3–21.

5. The Bankruptcy Court found, and the City does not contest, that the jurisdictional limitation imposed by § 505(a)(2)(A) is not implicated here. Although Custom did file a complaint in the Tax Court appealing the City's assessment of its real estate tax liability for 1994, the complaint was voluntarily dismissed by Custom before the Tax Court reached the merits. The withdrawal of a municipal tax appeal by the taxpayer does not constitute "adjudication" for the purposes of § 505(a)(2)(A). *Curtiss Wright Corp. v. Wood–Ridge Borough*, 4 N.J.Tax 68, 79 (N.J.Tax 1982). *See also In re Buchert*, 69 B.R. 816 (Bankr.N.D.Ill.1987), *aff'd*, 1987 WL 16019 (N.D.Ill. Aug. 19, 1987) (actual litigation necessary to trigger the application of § 505(a)(2)(A)); *In re Tapp*, 16 B.R. 315 (Bankr.D.Alaska 1981) (same).

tion begins with the plain language of the statute itself.") (citations omitted); *see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself."). On its face, the phrase "properly requests" is susceptible to more than one meaning. A broad reading would permit the bankruptcy court to exercise jurisdiction if the debtor or trustee commenced an adversary proceeding under § 505. It may also be understood to mean compliance with the taxing authority's procedural requirements. *See In re St. John's Nursing Home, Inc.*, 154 B.R. 117, 125 (Bankr.D.Mass.1993), *aff'd,* 169 B.R. 795 (D.Mass.1994) ("The adverb 'properly' connotes correctness and dictates conformity with the government unit's procedures. If the statute did not have this meaning, the word properly would be superfluous."). Because the language of § 505(a)(2)(B)(i) is unclear, we proceed to its legislative history for guidance.

Section 2a(2A) of the prior Bankruptcy Act was the precursor to § 505. It gave the bankruptcy court jurisdiction to:

[h]ear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any *unpaid tax*, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and adjudicated by a judicial or administrative tribunal of competent jurisdiction *and the time for appeal or review has not expired,* to authorize the receiver or the trustee to prosecute such appeal or review.

11 U.S.C. § 2a(2A) (repealed 1978) (emphases added). The language of § 2a(2A) made clear that the grant of jurisdiction was limited to the adjudication of unpaid taxes or of refunds if the debtor was first refused a refund in a non-bankruptcy forum and the applicable appeals period had not expired.

The enactment of § 505 in 1978 did not produce substantive changes. The bills filed both in the House and in the Senate precluded the bankruptcy court from exercising jurisdiction over refund claims unless the debtor had seasonably sought an appeal with the appropriate tax assessing entity.[6] The report of the House Commit-

---

**6.** The House bill provided, in pertinent part:

§ 505. Determination of tax liability.
(a) The court may determine the amount or legality of any unpaid tax, whether or not previously assessed, that has not been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title.
(b) *The trustee may prosecute an appeal or review of an adjudication by a judicial or administrative tribunal of competent jurisdiction of any tax, whether or not paid, if the time for appeal or review, as the case may be, of such adjudication has not expired before the date of the filing of the petition.*
H.R. 8200, 95th Cong, 2nd Sess. (1978) (emphasis added).
The Senate bill provided, in part:
§ 505. Determination of tax liability.
(a)(1) For purposes of determining any tax liability of the estate or of the debtor:

(A) The court in a case under this title may deter mine the liability of the debtor or the estate for—
(i) any tax, whether or not previously assessed or paid; and
(ii) the amount of any offset or counterclaim to or net overpayment of, the same tax for the same taxable period.
*(B) The court may not make any determination refer red to in subparagraph (A) concerning a tax incurred before the earlier of the order for relief or, in an involuntary case, the appointment of a trustee, if—*
(i) before such determination, a judicial or administrative tribunal of competent jurisdiction has determined any such liability;
*(ii) any administrative prerequisite to a refund of tax has not been satisfied,* unless the refund results from an offset or counterclaim to a claim or request for payment made by a governmental unit;
(iii) the debtor has initiated a proceeding in the United States Tax Court, or a simi-

tee on the Judiciary also reveals that § 505 was intended to make only stylistic changes to § 2a(2A):

> Subsections (a) and (b) are derived, with only stylistic changes, from section 2a(2A) of the Bankruptcy Act, added in 1966. They permit determination by the bankruptcy court of any unpaid tax liability of the debtor that has not been contested before or adjudicated by a judicial or administrative tribunal of competent jurisdiction before the bankruptcy case, and the prosecution by the trustee of an appeal from an order of such a body if the time for review or appeal has not expired before the commencement of the bankruptcy case.

H.R.Rep. No. 95–595, 1977 WL 9628 at *756 (1977), U.S. Code Cong. & Admin. News 1978 at 5963.

The Senate Judiciary Committee Report contains identical language. S.Rep. No. 95–989, 1978 WL 8531 at **151–52 (1978), U.S. Code Cong. & Admin. News at 5787. Further confirmation that the bankruptcy court's authority to determine refund rights are conditioned upon the debtor's compliance with the procedural requirements and limitation periods of the taxing authority can be found in the language that was proposed in 1999 to be added to § 505(a)(2). The proposed language provides that the bankruptcy court may not determine "(C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under any law (other than a bankruptcy law) has expired." 145 Cong. Rec. H2655–02, H2688, 1999 WL 272237, at *267 (1999).

Our analysis of the legislative history of § 505 and the conclusions we draw from it do not break new ground. *In re Cumber-land Farms, Inc.,* 175 B.R. 138 (Bankr. D.Mass.1991), was the first case in which there was analysis of § 505 and its legislative history. The debtor in *Cumberland Farms* sought refunds from 14 municipalities, protesting that the valuations of some 47 parcels of real estate were excessive. The debtor had paid the real estate taxes for the fiscal years 1988 through 1993, with the exception of the 1992 taxes, but had not contested the taxes for any of those years in accordance with applicable Massachusetts law. The municipalities argued that the bankruptcy court lacked jurisdiction to order a refund because by failing to apply for abatements under Massachusetts law, the debtor did not "properly request" refunds as required by § 505(a)(2)(B)(i).

The same Bankruptcy Judge, when faced with a similar set of issues in a previous case, had ruled that "§ 505 gives the bankruptcy court jurisdiction to adjudicate taxes which were not seasonably contested." *In re Ledgemere Land Corp.,* 135 B.R. 193, 198 (Bankr.D.Mass.1991). But in *Cumberland,* he reversed his position after examining the legislative history of § 505: "The conclusion is inescapable. Although the final version of section 505 was a compromise on some matters, both houses agreed with the general prohibition contained in the prior Act against adjudication of an estate's rights to a tax refund." 175 B.R. at 142. Section 505(a)(2)(B) must therefore, he continued, be "interpreted to prohibit adjudication by this court of the refund claims" where the debtor paid the taxes but did not contest them in accordance with Massachusetts procedure. *Id.*

This legislative history has persuaded other courts to conclude that the "properly requests" language of § 505(a)(2)(B)(i)

---

lar judicial or administrative tribunal under State or local law, to contest his liability for such tax; or

(iv) the period provided under other applicable tax law for initiating a proceeding in any tribunal referred to in subparagraph (iii) has commenced but has not

expired, unless the debtor notifies the court in the case under this title that he does not intent to initiate any such proceeding....

S. 2266, 95th Cong., 2d Sess. § 505 (1978) (emphases added).

prevents the bankruptcy court from adjudicating the right to refund where the debtor has not first sought a refund with the appropriate taxing authority. *See In re Constable Terminal Corp.*, 222 B.R. 734, 740 (Bankr.D.N.J.1998) (debtor's failure to comply with state procedural requirements for obtaining refund of real estate taxes precluded bankruptcy court from ordering refund); *In re Penking Trust*, 196 B.R. 389, 396 (Bankr.E.D.Tenn.1996) (court has no jurisdiction under § 505(a)(2)(B) to decide the estate's right to a refund where the trustee failed to make a proper refund request under Tennessee law for taxes paid prepetition); *In re EUA Power Corp.*, 184 B.R. 631, 636 (Bankr.D.N.H.1995) ("Under § 505(a)(2)(B)(i), the debtor must timely comply with state procedural requirements to request a refund of taxes already paid to preserve the bankruptcy court's discretionary jurisdiction to decide whether a refund is owed."); *In re St. John's Nursing Home, Inc.*, 154 B.R. 117, 120 (Bankr.D.Mass.1993), *aff'd*, 169 B.R. 795 (D.Mass.1994) ("Section 505(a)(2)(B) prohibits the bankruptcy court from adjudicating the right of an estate to a tax refund unless the trustee has first requested a refund from the government authority administering the tax and was refused."); *In re Graham*, 981 F.2d 1135, 1138 (10th Cir.1992) (trustee's filing of refund claim was nonwaivable jurisdictional prerequisite to bankruptcy court's determination of debtors' right to tax refund).

There are, moreover, policy considerations that compel us to read the "properly requests" language of § 505(a)(2)(B)(i) as creating a jurisdictional bar against adjudicating refund claims that are raised for the first time in a bankruptcy proceeding. Such a bar affords the taxing authority a reasonable amount of time to act on a refund request through its normal procedures. *See In re Maley*, 152 B.R. 789, 793 (Bankr.W.D.N.Y.1992). It is also a recognition of the havoc that would be visited on the financial stability of a municipality if it were forced to refund taxes paid years before: "A municipality can take appropriate action to collect unpaid taxes. It obviously cannot spend the money before collection. Once the money is in the coffers, however, it soon goes out." *Cumberland Farms*, 175 B.R. at 142. And lastly, the § 505(a)(2)(B) limitation advances federal-state comity by requiring that "if a federal proceeding is to upset property tax revenues received by a local governmental entity that entity should have prompt notice of that fact to budget accordingly." *EUA Power*, 184 B.R. at 636.

We recognize there are reported decisions, upon which Custom relies, holding that the failure to comply with state procedures for seeking a refund of real property taxes does not bar the bankruptcy court from determining refund claims under § 505(a). *See In re AWB Associates, G.P.*, 144 B.R. 270, 278 (Bankr.E.D.Pa.1992) (state procedural requirements are pre-empted by the bankruptcy court); *In re El Tropicano*, 128 B.R. 153 (Bankr.W.D.Tex.1991) (section 505 is an affirmative defense and not a jurisdictional bar). But *AWB* and *El Tropicano* did not specifically deal with § 505(a)(2)(B)(i) and its "properly requests" requirement. Nor did they engage in an analysis of the legislative history of that section, which may have led them to a different conclusion. We therefore find the two cases inapposite and unhelpful to the case at bar. *See also Penking Trust*, 196 B.R. at 396 (rejecting reasoning of *AWB* and *El Tropicano*); *St. John's Nursing Home*, 154 B.R. at 122 (same); *Constable Terminal*, 222 B.R. at 740 (same).

In light of the legislative history of § 505(a), the overwhelming case authority interpreting it as precluding the bankruptcy court from adjudicating claims for refund of taxes that were not seasonably contested in accordance with procedures set out by the taxing authority, and the policy considerations underpinning § 505, we are persuaded that the Bankruptcy Court here did not have jurisdiction to order the City to refund excess payments

for those years in which Custom paid the taxes but did not contest them in accordance with N.J.S.A. 54:3–21. Accordingly, the overpayments made by Custom for the 1992, 1993, and 1994 tax years cannot be refunded.

## B. Jurisdiction to Adjudicate Tax Offsets under 11 U.S.C. § 505(a)

Custom argues in the alternative that the § 505(a)(2)(B) limitation does not apply here because it is requesting an offset rather than a refund. It seeks to offset taxes unpaid and still due-including real estate taxes and sewer and water taxes-with the excess taxes paid in the years 1992, 1993, and 1994. There is some merit to its contention. Although Custom does not so argue, the same legislative history that compels us to find that the Bankruptcy Court was barred from making a refund determination here also leads us to conclude that where a refund is sought as an "offset," no claim need be filed first with the taxing authority:

> The House amendment adopts the rule of the Senate bill that the bankruptcy court can, under certain conditions, determine the amount of a tax refund claim by the trustee. Under the House amendment, if the refund results from an offset or counterclaim to a claim or request for payment by the Internal Revenue Service, or other tax authority, the trustee would not first have to file an administrative claim for refund with the tax authority.

124 Cong. Rec. H. 11, 110–11 (daily ed. Sept. 28, 1978), S.17426–28 (daily ed. Oct. 6, 1978) (Remarks of Rep. Edwards and Sen. DeConcini). *See also infra* note 5 (text of Senate bill 2266); *Ledgemere Land,* 135 B.R. at 198 ("Where, as here, refunds are sought as an offset or counterclaim to the claim of the taxing authority, no refund claim need first be made."); *United States v. Kearns,* 177 F.3d 706, 711 (8th Cir.1999) (noting that legislative history of § 505 indicates different treatment of refunds and offsets); *St. John's Nursing*

*Home,* 169 B.R. at 797 n. 4 (same); 4 Collier on Bankruptcy P 505.LH[2][a] (15 rev. ed.1999) (same).

In evaluating Custom's request for an offset, *In re Dunhill Medical, Inc.,* 1996 WL 354696 (Bankr.D.N.J.) is instructive. In that case, the Internal Revenue Service filed against the debtor a proof of claim on taxes owing, alleging that the debtor failed to remit quarterly employee withholding taxes and Federal Insurance Compensation Act (FICA) payments for certain periods between 1990 and 1992. The debtor claimed that it had overpaid withholding taxes and FICA payments during 1986 through 1991 and that the overpayments should be offset against taxes owed. The *Dunhill* court concluded, based on the legislative history of § 505, that the debtor could "dispense with the IRS requirement for filing a claim for a refund when a refund is sought as an offset or counterclaim to a proof of claim filed by the tax authority." *Id.* at * 5. But the court added a caveat: although the debtor's claim for an offset was properly asserted for purposes of § 505, the court must nonetheless apply, for each of the tax years at issue, the Internal Revenue Code's time requirements for refund of overpaid tax because the timeliness of a refund claim is jurisdictional. The court could thus consider the debtor's refund request only if it had filed a claim for refund within the statute of limitations period provided in the IRC. *Id.* at *6 (*citing United States v. Dalm,* 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) and *Kreiger v. United States,* 539 F.2d 317 (3d Cir.1976)).

There is no reason why the analysis in *Dunhill* should not apply with equal force to real property taxes and state law. *See, e.g., Constable Terminal,* 222 B.R. at 741 (applying *Dunhill* reasoning to request for offset of New Jersey real estate taxes). Although N.J.S .A. 54:4–69.2 and 54:4–134 allow the taxpayer to use overpayment of property tax as credit toward delinquent taxes and future taxes relating to the property, including water and sewer pay-

ments, the credit must be claimed pursuant to § 54:3–21, which provides that the taxpayer must file an appeal to the county board of taxation before or on April 1 of the tax year, or 45 days from the time notifications of assessments are mailed.[7] Failure to comply with the time prescriptions for filing an appeal, a long line of New Jersey courts has held, is a fatal jurisdictional defect, *see Lamantia v. Howell Township*, 12 N.J.Tax 347, 351 (N.J.Tax 1992) ("Compliance with this statutory requirement is an unqualified jurisdictional requirement."), and bars the maintenance of an action for refund. *See F.M.C. Stores Co. v. Borough of Morris Plains*, 100 N.J. 418, 495 A.2d 1313, 1316–17 (1985); *AVR Realty Co. v. Cranford Tp.*, 16 N.J.Tax 550, 559 (N.J.Tax 1997); *Cumberland Holding Corp. v. Vineland City*, 11 N.J.Tax 457, 460 (N.J.Tax 1991). Thus, although Custom need not have filed a claim with the county tax board before seeking an offset in bankruptcy court—as it was required for obtaining a refund under § 505(a)(2)(B)—its request for an offset must nevertheless be timely. Because Custom did not and cannot now file appeals of the tax assessments for the 1992, 1993, and 1994 tax years within the time requirements set out in N.J.S.A. 54:3–21,

its claim for offsets based on overpayments on those years is time-barred. As for the 1995 tax year, if the partial payment made by Custom was less than its real estate tax obligation for that year, based on the Bankruptcy Court's valuation of the property, Custom is responsible for the difference; if, however, the partial payment exceeds its reassessed 1995 real estate tax obligation, Custom is not entitled to a refund or an offset.

## C. Expert Testimony

■ We now turn to the City's claim that the District Court erred in affirming the Bankruptcy Court's determination that Custom met the burden of providing credible expert testimony sufficient to prove property valuation different from that calculated by the City. The City contends that under New Jersey law, the testimony of a real estate appraiser—who was Custom's sole witness on this issue—cannot establish property valuation when that valuation is predicated on estimates of environmental contamination and clean-up costs. Where environmental contamination affects valuation, the City argues, the testimony of an environmental expert is required. We disagree.

---

7. N.J.S.A. 54:4–69.2 provides:
 (Credit, against taxes due or to become due, for refund on reduction of assessment): If any taxpayer shall have paid the taxes upon any assessment of property under the provisions of chapter four of Title 54 of the Revised Statute and shall, upon appeal, have obtained a judgment of the county board of taxation granting a reduction in the said assessment from which neither the taxpayer nor the municipality shall have duly appealed, or shall have obtained a judgment of the State Board of Tax Appeals granting a reduction in such assessment or confirming a reduction granted by the county board or any part thereof, such taxpayer may claim and the collector of taxes shall allow a credit, in an amount equal to the appropriate refund incident to such reduction of said assessment, against any taxes then due or to become due on such property. . . .
 Stat. Ann. § 54:4–69.2.
 N.J.S.A. 54:4–134 states, in part:

(Property tax refund applied against delinquent property taxes, water or sewer payments or parking or payroll taxes): Whenever the owner of a real property shall be entitled, pursuant to a determination of a county board of taxation or a judgment of the tax court, to a refund of all or any portion of the property taxes paid against the property in any given year, and any property taxes, water or sewer payments, or parking or payroll taxes imposed to be collected by the municipality against that property or the owner or owners of that property are delinquent at the time of the determination or judgment, the governing body of the municipality constituting the taxing district in which the property is located may apply the refund, or such portion thereof as may be necessary, including any accrued interest, against the delinquency.
Stat.Ann. § 54:4–134.

 When a taxpayer challenges an assessment, "[t]he settled rule [in New Jersey] is that there is a presumption that an assessment made by the proper authority is correct and the burden of proof is on the taxpayer to show otherwise." *Aetna Life Ins. Co. v. Newark,* 10 N.J. 99, 89 A.2d 385, 387 (1952). To overcome the presumption, the taxpayer must prove a true valuation different from the assessment with evidence that is "definite, positive and certain in quality and quantity." *Id.* In New Jersey, environmental contamination has an impact on property valuation. *Inmar Associates, Inc. v. Borough of Carlstadt,* 112 N.J. 593, 549 A.2d 38, 41–42 (1988).

The City cites to several New Jersey cases to demonstrate that a taxpayer must present an environmental expert in addition to any other experts to establish property valuation affected by environmental contamination. *See Badische Corp. v. Town of Kearny,* 288 N.J.Super. 171, 672 A.2d 186, 193 (App.Div.1996), *appeal after remand,* 17 N.J.Tax 594 (N.J.Super.Ct.App.Div.1998) (remand to tax court for recalculation of effect of clean-up costs on property valuation was implicit finding that taxpayer had proved contamination and its effect on the property value in lower court where two environmental experts and other witnesses had testified); *American Stores v. Town of Kearny,* 14 N.J.Tax 186, 188 (N.J.Super.Ct.App.Div.1994) (appraisal expert insufficient absent environmental expert where no proof of environmental damage presented); *Jablin v. Borough of Northvale,* 13 N.J.Tax 103, 109 (N.J.Su-per.Ct.App.Div.1994) (request for reserve operating expense to monitor possible contamination denied despite testimony of appraisal expert where there was no proof of pollution); *Jablin v. Northvale Borough,* 14 N.J.Tax 184, 185 (N.J.Su-per.Ct.App.Div.1994) (same); *Bergen County Associates v. Borough of East Rutherford,* 12 N.J.Tax 399, 412 (N.J. Tax Ct.1992), *aff'd,* 265 N.J.Super. 1, 625 A.2d 524 (App.Div.1993), *cert. denied,* 134 N.J. 482, 634 A.2d 528 (1993) (real estate assessor testimony discredited in absence of record support for his wetlands evaluation); *University Plaza Realty Corp. v. Hackensack,* 12 N.J.Tax 354, 357–58 (N.J.Tax 1992), *aff'd,* 264 N.J.Super. 353, 624 A.2d 1000 (App.Div.1993), *cert. denied,* 134 N.J. 481, 634 A.2d 527 (1993) (finding of property devaluation due to asbestos contamination after testimony presented by an environmental expert, a real estate appraiser, and other witnesses).

 But despite City's claim to the contrary, none of these cases precludes a real estate appraiser from evaluating contaminated property without the testimony of an environmental expert. At best, they stand for the proposition that a real estate appraiser cannot establish valuation without proof that environmental contamination exists. Here, the real estate expert did not make any findings as to whether the property was contaminated. Rather, he testified-relying on the letters from the United States Environmental Protection Agency and the New Jersey Department of Environment and the Killiam Report, all of which indicated that environmental contamination existed [8]—about the valuation

8. The City also argues that the real estate appraiser should not have been permitted to rely on the Report and letters because they themselves were not submitted into evidence. We disagree. Federal Rules of Evidence Rule 703 states:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Fed.R.Evid. 703. *See also 68.94 Acres of Land,* 918 F.2d at 392 n. 2 (citing Fed.R.Evid. 703 and Notes of Advisory Committee). The Bankruptcy Court questioned the real estate appraiser whether other experts in his field traditionally relied on such information, and the witness indicated that they did. *See Advent Systems Ltd. v. Unisys Corp.,* 925 F.2d 670, 682 (3d Cir.1991) (court must make fac-

of the property as affected by such contamination. Because there is no merit to the City's argument, we find that the District Court did not err in affirming the Bankruptcy Court's determination that Custom met its burden of providing credible expert testimony on property valuation.

### IV. Conclusion

Based on the aforementioned reasons, we find that the Bankruptcy Court was without jurisdiction to grant Custom's request for refund and offset of overpayments made in the tax years 1992, 1993, and 1994. As for the 1995, 1996, and 1997 real estate taxes, we will remand this case to the District Court for remand to the Bankruptcy Court for further proceedings consistent with this opinion.

tual inquiry and findings as to what data is found to be reliable by experts in the field).